UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>    *Plaintiff*,<br>    v.<br><br>GRAND TETON PROFESSIONALS, LLC,<br>*et. al.*,<br>    *Defendants*. | No. 3:19-cv-933 (VAB) |

**RULING ON PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRIANING ORDER**

The Federal Trade Commission ("FTC") has sued Grand Teton Professionals, LLC, 99th Floor, LLC, Mait Management, Inc., Demand Dynamics, LLC, Atomium Corps, Inc., Startup Masters NJ Inc. (both as a Wyoming and New Jersey Corporation), First Incorporation Services, Inc. (both as a Wyoming and Florida corporation), Douglas Filter, and Marcio Andrade (collectively "Defendants") for violations of the 15 U.S.C. §§ 53(b) and 57(b) of the FTC Act, 410(b) of the Credit Repair Organizations Act ("CROA"), Section 6(b) of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(b) of the Consumer Review Fairness Act, Section 108(c) of the Truth in Lending Act ("TILA"), and Section 918(c) of the Electronic Fund Transfers Act, 15 U.S.C. § 1693(c). Complaint for Permanent Injunction and other Equitable Relief, ECF No. 1.

Along with the filing of its Complaint, the FTC has moved *ex parte* for a temporary restraining order that included a freezing of assets, the temporary disabling of websites, the preservation of records, and expedited discovery under Section 13(b) of the FTC Act and Rule 65(b) of the Federal Rules of Civil Procedure.

For the following reasons, the Court **GRANTS** the FTC's motion for a temporary

restraining order. The Court also will issue an order detailing the scope of the temporary restraining order and for the Defendants to show cause why a preliminary injunction should not issue **on Friday, June 28, 2019 at 11:30 a.m.**

**To the extent that any Defendant subject to this Ruling and the subsequent Order wish the Court to address the appropriateness of an injunction or continuing the temporary restraining order before June 28, 2019, they may move for an earlier hearing date.**

## I. STANDARD OF REVIEW

Under section 13(b) of the FTC Act, federal courts may grant preliminary or permanent injunctive relief in actions where the FTC, acting "in the interest of the public," has reason to believe that any entity "is violating, or is about to violate, any provision of law enforced by the [FTC]." 15 U.S.C. § 53(b). Even though section 13(b) refers only to injunctive relief, courts have held that the statutory authority found in section 13(b) "permits courts to grant ancillary equitable relief, including equitable monetary relief." *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011) (citing cases). Further, federal district courts have "inherent power . . . to fashion effective relief." *SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (noting that a district court's "inherent power" to "fashion effective relief" includes the ability to issue anti-litigation injunctions) (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).

A federal agency's motion for a preliminary injunctive relief in the public interest for a statutory violation does not require proof of irreparable harm. *See Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011) (discussing what the SEC must show in seeking injunction under section 20(b) of the Securities Act). Moreover, as opposed to a "preliminary injunction enjoining a violation . . ., an asset freeze requires a lesser showing." *SEC v. Heden*, 51 F. Supp. 2d 296, 298

(S.D.N.Y. 1999) (citing *SEC v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990)). Likelihood of success on the merits is all that must be shown. *See SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998); *SEC v. Heden*, 51 F. Supp. 2d at 298. One reason for requiring a lesser showing is that "[a]n asset freeze is a provisional remedy" that merely preserves the status quo to ensure that, if the agency obtains a judgment, "money will be available to satisfy that judgment." *SEC v. Byers*, No. 08 Civ. 7104, 2009 WL 33434, at *2 (S.D.N.Y. Jan. 7, 2009).

Further, "[t]he plenary powers of a federal court to order an asset freeze are not limited to assets held solely by an alleged wrongdoer, who is sued as a defendant in an enforcement action." *Smith*, 653 F.3d at 128. Rather, "asset freezes may 'apply to non-parties, such as relief defendants allegedly holding the funds of defendants.'" *SEC v. McGinn, Smith & Co.*, 752 F. Supp. 2d 194, 205 (N.D.N.Y. 2010) (quoting *Heden*, 51 F. Supp. 2d at 299), *vacated in part on other grounds*, *SEC v. Wojeski*, 752 F. Supp. 2d 220 (N.D.N.Y. 2010), and aff'd, 432 F. App'x. 10 (2d Cir. 2011) (summary order).

In such cases, federal courts may freeze the assets of a relief defendant who possesses ill-gotten funds and does not have a legitimate claim to those funds. *See SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) (granting preliminary injunction freezing illegitimate proceeds transferred to relief defendant wife by defendant husband); *McGinn*, 752 F. Supp. 2d at 205 (noting that an asset freeze requires the "less burdensome standard" of showing "only that [the agency] is likely to succeed on the merits, or that an inference can be drawn that the party has violated" applicable laws) (internal quotation marks and citations omitted). Indeed, "[t]he standard of review for an injunction freezing assets of a relief defendant is whether [the agency] has shown that it is likely to succeed on the merits; [the agency] need not make any showing that a future violation is likely, because it is not accusing the nominal defendant of any wrongdoing."

*Cavanagh*, 155 F.3d at 136.

## II.     DISCUSSION

Unlike a preliminary injunction, a temporary restraining order is not constrained by Rule 65(a)'s requirement of notice to the adverse party. *See Standard Microsystems Corp. v. Texas Instruments, Inc.*, 916 F.2d 58, 62 (2d Cir.1990) ("Where speed is needed, the rules of procedure provide for temporary restraining orders, even without notice, to prevent irreparable harm." (citing Fed. R. Civ. P. 65)). Rule 65(b) provides that a temporary restraining order may be granted without notice to the adverse party only if "(1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). The restrictions on the availability of *ex parte* temporary restraining orders imposed by Rule 65(b) are "stringent," *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438-39 (1974), and must be "scrupulously honored." *Austin v. Altman*, 332 F.2d 273, 275.

Under section 13(b) of the FTC Act, a district court is authorized to issue preliminary and permanent injunctive relief at the request of the Commission "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest . . . " *See* 15 U.S.C. § 53(b). "In actions under section 13(b) of the FTC Act, a district court has authority to issue a TRO to preserve the status quo and prevent irreparable harm to the court's ability to award final relief." *FTC v. Leanspa*, *LLC*, No. 3:11-cv-1715 (VLB), ECF No. 23, at 4; *FTC v. Mallett*, 818 F. Supp. 2d 142, 149 (D.D.C. 2011) ("The public interest in ensuring the enforcement of federal consumer protection laws is strong .

. . .").

Based on a review of the FTC's filings, there is good cause to believe that the FTC is likely to prevail on the merits of their claims. FTC has credibly and sufficiently alleged that Defendants, through websites, e-mails, and text messages, target customers with false promises of credit relief services. When consumers provide their credit or debit card to receive credit relief services, Defendants allegedly force consumers to pay illegal advance fees. In addition, the FTC alleges several unlawful financing, billing, and accounting practices.

The Second Circuit has recognized court authority to grant relief from illegal consumer conduct under Section 13(b). *See Bronson*, 654 F.3d at 363 (holding that Section 13(b) of the FTC Act permits courts to grant ancillary equitable relief). To ensure future relief, the FTC asks the Court to enter the proposed *ex parte* temporary restraining order: (A) prohibiting Defendants from engaging in illegal conduct; (B) freezing Defendants's assets; (C) disabling temporarily Defendants's websites; and (D) preserving records; and (E) expediting discovery.

### A.    Prohibiting Conduct

The FTC seeks an *ex parte* order prohibiting Defendants from making future misrepresentations concerning credit repair services, charging advanced fees, failing to provide Credit Repair Organizations Act's mandated disclosures, using anti-disparagement or anti-chargeback clauses in consumer contracts, using remotely created checks, advertising financing without Truth in Lending Act mandated disclosures, or debiting consumer accounts without written authorization.

The FTC alleges the following "unlawful credit repair practices" by the Defendants: " (1) false promises that they will remove negative information from consumers' credit reports and improve consumers' credit scores, in violation of the FTC Act, CROA; and the [the FTC's

Telemarketing Sales Rule (the "TSR")]; (2) advising consumers to mislead credit reporting agencies (through filing false ID theft affidavits) and lenders (through the use of third-party tradelines), in violation of CROA; (3) failure to make required CROA disclosures; and (4) collection of prohibited advance fees for credit repair services, in violation of CROA and TSR." Memorandum in Support of FTC's *Ex Parte* Motion for Temporary Restraining Order, ECF No. 9-1 ("Memo. In Supp. of FTC's *Ex Parte* Motion"). at 8.

The FTC further alleges that "Defendants unlawfully attempt to stifle consumers' posting of negative but truthful reviews about Defendants and from exercising their statutory rights to dispute Defendants' illegal advance fees" and have "financing and billing practices" in violation of various federal statutes and regulations. *Id.*

As a result, under the Court's authority "to grant ancillary equitable relief, including equitable monetary relief," *see Bronson*, 654 F.3d at 365, given the serious nature of the harms alleged, restrictions of unlawful conduct are reasonable. *See Mallett*, 818 F. Supp. 2d at 150 (("[R]equiring [defendant] to comply with federal law cannot rise to a cognizable burden . . . .").

The Court therefore finds that enjoining Defendants from engaging in illegal conduct is necessary for the Court to effectuate final relief in this case.

### B.     Asset Preservation

The FTC also seeks to "help ensure the availability of assets, preserve the status quo, and guard against the dissipation and diversion of assets" and thus seek to "freeze the assets of corporate and individual defendants and require an accounting, where, as here, the individual Defendants controlled the deceptive activity and had actual or constructive knowledge of the deceptive nature of the practices." Memo. In Supp. of FTC's *Ex Parte* Motion at 46 (citations omitted).

An asset freeze is appropriate where there is a significant risk of the dissipation of defendants' assets during litigation. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972). The Second Circuit has characterized freezing assets "as ancillary relief that facilitates monetary recovery by preserving the status quo pending litigation of statutory violations." *FTC v. Strano*, 528 F. App'x 47, 49 (2d Cir. 2013) (summary order).

Here, the FTC has alleged that "[t]he pervasive nature of Defendants' unlawful behavior and attempts to conceal their identities as the individuals responsible for that behavior demonstrates a likelihood that they will dissipate or conceal assets and destroy or conceal evidence of their unlawful conduct if they are notified of the FTC's intention to seek equitable monetary relief." Rule 65 Certification and Declaration of FTC Counsel Gregory Ashe In Support of the FTC's *Ex* Parte Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Motion to Temporarily Seal Case File, ECF No. 9-3 ("Ashe Decl."), at 2. In support of an assert freeze, counsel for the FTC has submitted a sworn affidavit providing illustrative examples of parties subject to court orders seeking to dissipate assets. *See id.* at 3-11.

As a result, there is a strong likelihood that assets may be dissipated during litigation based on evidence the FTC has submitted demonstrating that Defendants' operation is permeated by fraud. *See id.* at 11 (asserting that "there is good cause to believe that immediate and irreparable damage will result to consumers from the concealment, transfer, or destruction of Defendants' records and from the concealment or transfer of Defendants' assets if Defendants receive advance notice of the FTC's application for a temporary restraining order with other equitable relief. Thus, it is in the interests of justice that such application be granted without notice."). An asset freeze therefore is reasonable.

Accordingly, the Court finds that enjoining Defendants with an asset preservation order is necessary for the Court to effectuate final relief in this case.

### C. Temporary Disabling of Defendant Websites

The FTC further requests the temporary disabling of Defendants' websites to prevent future consumers from harm by their fraudulent credit scheme. The FTC argues that: "Disabling these websites and suspending their domain name registrations will ensure the Defendants cannot evade compliance with any preliminary relief entered by this Court pending final determination of this matter." Memo. In Supp. of FTC's *Ex Parte* Motion at 48.

Given the breadth of online accessibility and the show cause hearing scheduled for June 28, 2019, as well as the Court's availability for a hearing even earlier than June 28, 2019, the Court finds that temporary disabling of Defendants websites until a show cause hearing can be held is necessary for the Court to effectuate final relief in this case. *See AW Licensing, LLC v. Bao*, N0.15- CV-1373, 2015 WL 10527603, at \*6 (S.D.N.Y. April 2, 2015) (entering a temporary restraining order to "disable service to these websites until the disposition of this action")

### D. Preservation of Records and Expedited Discovery

Finally, the FTC requests immediate access to Defendants' records and expedited discovery because Defendants might otherwise destroy evidence or dissipate assets. The FTC argues that, in the past, "defendants engaged in similarly serious unlawful practices destroyed documents upon learning of an impending law enforcement action." Memo. In Supp. of FTC's *Ex Parte* Motion at 48; *see also* Ashe Decl. at 11 (asserting that "there is good cause to believe that immediate and irreparable damage will result to consumers from the concealment, transfer, or destruction of Defendants' records . . . if Defendants receive advance notice of the FTC's

8

application for a temporary restraining order with other equitable relief. Thus, it is in the interests of justice that such application be granted without notice.").

"District Courts are authorized to depart from normal discovery procedures and fashion discovery by order to meet particular needs in particular cases, which is appropriate here where asset dissipation is likely." *FTC v. Campbell Capital LLC*, No. 18-CV-1163, 2018 WL 5781458, at *4 (N.D.N.Y. Oct. 24, 2018).

Accordingly, a temporary restraining order requiring Defendants to make financial disclosures, preserve records, and expedite discovery is necessary for the Court to effect final relief in this case.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the FTC's motion for a temporary restraining order.

The Court also will issue an order detailing the scope of the temporary restraining order and for the Defendants to show cause why a preliminary injunction should not issue **on Friday, June 28, 2019 at 11:30 a.m.**

**To the extent that any Defendant subject to this Ruling and the subsequent Order wish the Court to address the appropriateness of an injunction or continuing the temporary restraining order before June 28, 2019, they may move for an earlier hearing date.**

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of June 2019.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

9